IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL EVENT SERVICES, INC. | : | CIVIL ACTION NO: |
| | : | |
| v. | : | 2:21-cv-04423 |
| | : | |
| NATIONAL FIRE & MARINE | : | |
| INSURANCE COMPANY; | : | |
| MEDPRO GROUP; | : | |
| BARRI ORLOW; | : | |
| PETER BEHNKE; | : | |
| EDGEWOOD HEALTH CARE ADVISORS; | : | |
| INTEGRO GROUP; | : | |
| EPIC INSURANCE BROKERS & | : | |
| ADVISORS; CRC GROUP; | : | |
| MAURIZIO BIANCHI, ADMINISTRATOR | : | |
| OF THE ESTATE OF MARCO BIANCHI, IN | : | |
| HIS OWN RIGHT, AND ON BEHALF OF | : | |
| DECEDENT'S NEXT OF KIN; ALEX | : | |
| BIANCHI; THE PHILADELPHIA EAGLES; | : | |
| LINCOLN FINANCIAL FIELD; | : | |
| NATIONAL FOOTBALL LEAGUE | : | |

# ANSWER WITH
## COUNTERCLAIM OF DEFENDANT, EAGLES STADIUM OPERATOR, LLC
### (incorrectly identified as THE PHILADELPHIA EAGLES and
### LINCOLN FINANCIAL FIELD)

1.     Admitted in part, with qualification, and denied in part. The primary and excess

policies attached as Exhibits were issued, according to the Declarations page for each policy, by

National Fire & Marine Insurance Company ("National Fire"). Answering defendant Eagles

Stadium Operator, LLC ("ESO"), which uses the trade names "The Philadelphia Eagles" and

"Lincoln Financial Field," incorporates here by reference its answers to paragraphs 9 and 10 as set

forth below. After reasonable investigation, and except for the reference in Policy Declarations to

CRC Insurance Services Inc. as "Producer" of insurance policies at issue, answering defendant

ESO lacks knowledge or information sufficient to admit or deny averments regarding agents and brokers who procured or who were engaged to procure insurance for National Event.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted

6.      Admitted with qualification.  The operative pleading in the *Bianchi* lawsuit is the Second Amended Complaint. On September 22, 2019 National Event was under contract with answering defendant ESO to provide Basic and Advanced Life Support emergency medical services, ambulance transportation services and other services for Eagles football games played at Lincoln Financial Field. Attached as Exhibit A to the Second Amended Complaint in the underlying *Bianchi* action is a partially redacted copy of the *Agreement [for] Provision of Emergency Medical Services For Lincoln Financial Field* that was in effect on September 22, 2019.

7.      Admitted

8.      Admitted.

9.      Denied in part.  National Fire is a non-admitted insurance company that conducts business in Pennsylvania as an eligible surplus-lines insurer.

10.      Admitted with qualification. After reasonable investigation, ESO has determined that: MedPro Group Inc. ("MedPro Group") is a corporation formed and existing under the laws of Indiana, and maintains it headquarters in Fort Wayne, Indiana; prior to September 4, 2015, MedPro Group was known and conducted business as Medical Protective Corporation; and at no time relevant to the time periods averred in National Event's Complaint was MedPro Group either an admitted liability insurance company or an eligible surplus-lines insurer for Pennsylvania. The

2

relationship between MedPro Group and National Fire is not disclosed in policies issued to National Event (which have been provided to ESO) except for the following notation in the Policy Declarations under "**ISSUING COMPANY**": "National Fire & Marine Insurance Company, as administered by _a_ MedPro Group company Omaha, Nebraska." (italics and underscore added). National Fire is not identified in any such policy issued to National Event as "a MedPro Group company" and no other entity, be it an insurance company or otherwise, is named in the policies as "the MedPro Group company" with authority delegated by National Fire to "administer" any policy or claim submitted under any policy issued to National Event. Multiple persons self-identifying as representatives of MedPro Group have communicated with National Event and ESO on behalf of National Fire regarding defense and indemnity related to the _Bianchi_ lawsuit.

11.     Denied as stated. ESO incorporates here by refences its responses to paragraphs 1, 9 and 10 as set forth above, and its response to paragraph 122 as set forth below. It is admitted that coverage disputes have arisen in response to multiple policies and coverage parts.

12.     Admitted in part and denied in part. Answering defendant ESO assumes that National Event intended to allege that Ms. Orlow was and is an agent, servant or employee of National Fire, or MedPro Group or both. Letters and email authored by Ms. Orlow, sent to counsel for ESO, bearing the MedPro Group trade name, and expressing disclaimers of and limitations on coverage under liability policies issued to National Event (and naming ESO as an additional insured) necessarily imply but never explicitly state that Ms. Orlow is employed by MedPro Group. In a letter dated April 5, 2021 Robert Ryan, Vice President of Claims for MedPro Group (Mid-Atlantic division), identified Ms. Orlow as his subordinate and a "claims professional" who, along with Mr. Ryan, was and is involved in "the management of the _Bianchi_ lawsuit" and coverage determinations.

3

13.     After reasonable investigation, ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 13.

14.     After reasonable investigation, ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 14.

15.     After reasonable investigation, ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 15.

16.     After reasonable investigation, ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 16.

17.     Admitted with qualification. Policy Declarations identify CRC Insurance Services Inc. as "Producer" of the policies at issue. After reasonable inquiry , ESO has determined that CRC Insurance Services, Inc. is an Alabama corporation, has its headquarters in Alabama, and is engaged in the sale and brokerage of insurance.

18.     After reasonable investigation, ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 18.

19.     Admitted in part and denied in part. Policy Declarations identify CRC Insurance Services Inc. as "Producer" of policies at issue. After reasonable investigation, ESO is without knowledge or information sufficient to admit or deny the remaining averments of paragraph 19.

20.     Upon information and belief, admitted.

21.     Upon information and belief, admitted.

22.     Denied as stated. It is admitted that under *Vale Chemical Co. v Hartford Accident & Indemnity Co.,* (Pa. 1986) the plaintiffs in an underlying tort action are necessary parties and indispensable to the court's subject matter jurisdiction under the Pennsylvania Declaratory Judgment Act.

23.     Denied. Answering defendant ESO incorporates here by reference its answers to paragraph 1 and 6 as set forth above. Answering defendant ESO is a limited liability company formed and maintained under the law of Pennsylvania and has its place of business at 1 NovaCare Way, Philadelphia.

24.     It is admitted that ESO is a defendant in the underlying *Bianchi* lawsuit.  By way of further answer, ESO is also an additional insured under policies of insurance at issue and National Event's Complaint seeks both declaratory relief and reformation of policies at issue.

25.     Denied. Answering defendant ESO incorporates here by reference its answers to paragraphs 1, 6 and 23 as set forth above. By way of further answer, no entity formed and conducting business as "Lincoln Financial Field" was party to the *Agreement [for] Provision of Emergency Medical Services For Lincoln Financial Field* that was in effect on September 22, 2019.

26.     Denied. Answering defendant ESO incorporates here by reference its answer to paragraph 25 as set forth above.

27.     Denied. The National Football League is a professional football league consisting of 32 teams.

28.     Denied. By stipulation of all parties, approved by the court, the National Football League was dismissed from the *Bianchi* Lawsuit on December 9, 2020.  Answering defendant ESO also incorporates here by reference its answer to paragraph 6 as set forth above. By way of further answer, the National Football League was not a party to the *Agreement [for] Provision of Emergency Medical Services For Lincoln Financial Field* that was in effect on September 22, 2019. The National Football League was not a named insured or an additional insured under policies of liability insurance issued by National Fire to National Event.

29.     Denied. The *Agreement* for emergency medical services made as of February 27, 2017 and effective for the period from March 1, 2017 to February 28, 2019 was a contract between National Event Services, Inc. and Eagles Stadium Operator, LLC. Exhibit C is not signed and is partially redacted but is otherwise a copy of the *Agreement* made as of February 27, 2017.

30.     Denied. Answering defendant ESO incorporates here by reference its answers to paragraphs 1, 6 and 29 as set forth above.

31.     Admitted with qualification. Paragraph 31 quotes but only in part, and with non-substantive typographical mistakes, from section VI of the emergency medical services *Agreement* attached as Exhibit C.

32.     After reasonable investigation, ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 32.

33.     After reasonable investigation, ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 33.

34.     It is admitted that primary and excess liability insurance policies corresponding to the "policy periods" recited in this paragraph are attached to the Complaint as Exhibits D through I inclusive. It is denied that the policies are complete. Policy applications that are expressly incorporated by reference and are made part of the policies are not included in the Exhibits. Answering defendant ESO also incorporates here by reference its answer to paragraph 33 as set forth above.

35.     Answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Healthcare Liability Policy Declarations for policies attached as

Exhibits D, E and F are accurately quoted, in part, as to coverage parts selected, limits of liability, and claims-made-and-reported versus occurrence-based insuring agreements.

36.    Admitted with qualification. The excerpted text recited in paragraph 36 and taken from the Professional Liability Coverage Part form, Page 1 of 4, accurately quotes in part, and with non-substantive typographical mistakes, from ¶ **I.**A.1.a. of policy form 0011-PPF-00-1215, which form is common to the policies attached as Exhibits D, E and F.

37.    Admitted with qualification. The definition averred is accurately quoted from Definition N at Page 3 of 19 of the Common Policy Provisions and Conditions (policy form 0010-PXX-00-1215) that apply to all Coverage Parts of the Primary Policies.

38.    Admitted with qualification. The definition averred is accurately quoted from Definition FF at Page 7 of 19 of the Common Policy Provisions and Conditions (policy form 0010-PXX-00-1215) that apply to all Coverage Parts of the Primary Policies.

39.    Admitted. The *Bianchi* lawsuit was commenced, served and reported to National Fire during the Policy Period from 02/01/2020 to 02/01/2021.

40.    Admitted with qualification. The excerpted text recited in paragraph 40 and taken from the General Liability Coverage Part form, Page 1 of 11, accurately quotes in part, and with non-substantive typographical mistakes, from ¶ **I.**A.2.a. of policy form 0012-PGF-00-1215, which form is common to the policies attached as Exhibits D, E and F.

41.    Admitted with qualification. The definition averred is accurately quoted from Definition K at Page 2 of 19 of the Common Policy Provisions and Conditions (policy form 0010-PXX-00-1215) that apply to all Coverage Parts of the Primary Policies.

42.     Admitted with qualification. The definition averred is accurately quoted from Definition E at Page 1 of 19 of the Common Policy Provisions and Conditions (policy form 0010-PXX-00-1215) that apply to all Coverage Parts of the Primary Policies.

43.     Admitted. The *Bianchi* lawsuit avers an incident at Lincoln Financial Field that occurred on September 22, 2019 and during the Policy Period from 02/01/2019 to 02/01/2020.

44.     Answering defendant ESO lacks knowledge or information sufficient  to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Excess Healthcare Liability Policy Declarations for the excess policy attached as Exhibit G is accurately quoted, in part, as to policy limits for both the General Liability Coverage Part on an Occurrence basis and the Follow Form Coverage Part on an Occurrence or Claims-Made and Reported or Occurrence basis.

45.     Answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Excess Healthcare Liability Policy Declarations for the excess policies attached as Exhibits H and I are accurately quoted, in part, as to policy limits for the General Liability Coverage Part on an Occurrence basis, for the Follow Form Coverage Part on an Occurrence or Claims-Made and Reported or Occurrence basis, and for the Professional Liability Coverage Part on a Claims-Made and Reported basis.

46.     It is admitted that the General Liability Coverage Part form is identical (form 3012-TGF-00-1215) for each of the excess policies attached as Exhibits G, H and I. It is further admitted that paragraph 46 quotes accurately and in part, with non-substantive typographical mistakes, from ¶ **I.** A. 2. at Page 1 of 9 of the coverage part form.

47.     It is admitted that the Common Policy Provisions and Conditions form is identical (form 3010-TXX-00-1215) for each of the excess policies attached as Exhibits G, H and I. It is also admitted that paragraph 47 accurately quotes Definition L found at page 2 of 19 of the Common Policy Provisions and Conditions form.

48.     It is admitted that the Common Policy Provisions and Conditions form is identical (form 3010-TXX-00-1215) for each of the excess policies attached as Exhibits G, H and I. It is also admitted that paragraph 48 accurately quotes Definition F found at page 1 of 19 of the Common Policy Provisions and Conditions form.

49.     Admitted. The *Bianchi* lawsuit avers an incident that occurred at Lincoln Financial Field on September 22, 2019 and during the Policy Period from 02/01/2019 to 02/01/2020.

50.     It is admitted that the Professional Liability Coverage Part form is identical (form 3011-TPF-00-1215) for each of the excess policies attached as Exhibits H and I. It is further admitted that paragraph 50 quotes accurately but in part, with non-substantive typographical mistakes, from ¶ **I.** A. 1. a. at Page 1 of 3 of the coverage part form. Form 3011-TPF-00-1215 is not part of the policy attached as Exhibit G.

51.     Admitted with qualification. It is admitted that the Common Policy Provisions and Conditions form is identical (form 3010-TXX-00-1215) for each of the excess policies attached as Exhibits G, H and I. It is also admitted that paragraph 51 accurately quotes Definition P found at page 3 of 19 of the Common Policy Provisions and Conditions form. Definition P uses the defined term "professional services" which is found at Definition GG and states, in part, that "**professional services** means **treatment**, peer review and utilization management, not including **managed care services**." (bold in original). **Treatment** is also a defined term at Definition JJ.

9

52.     It is admitted that the Common Policy Provisions and Conditions form is identical (form 3010-TXX-00-1215) for each of the excess policies attached as Exhibits G, H and I. It is also admitted that paragraph 52 accurately quotes Definition L found at page 2 of 19 of the Common Policy Provisions and Conditions form.

53.     It is admitted that the Common Policy Provisions and Conditions form is identical (form 3010-TXX-00-1215) for each of the excess policies attached as Exhibits G, H and I. It is also admitted that paragraph 53 accurately quotes Definition F found at page 1 of 19 of the Common Policy Provisions and Conditions form.

54.     It is admitted that the Common Policy Provisions and Conditions form is identical (form 3010-TXX-00-1215) for each of the excess policies attached as Exhibits G, H and I. It is also admitted that paragraph 54 accurately quotes Definition GG found at page 7 of 19 of the Common Policy Provisions and Conditions form. **Treatment** is also a defined term at Definition JJ.

55.     Admitted. The *Bianchi* lawsuit was commenced, served and reported to National Fire during the Policy Period from 02/01/2020 to 02/01/2021.

56.     Admitted.

57.     Admitted in part. It is admitted that National Event obtained primary and excess liability insurance coverage issued by National Fire and for the policy periods from February 1, 2019 to February 1, 2020 and from February 1, 2020 to February 1, 2021. To the extent that the averments of this paragraph are intended to imply or may be read to imply that National Event procured liability insurance that was fully compliant with insurance procurement specifications set forth in two time-restricted *Agreements* with ESO to provide emergency medical services at Lincoln Financial Field the averments are conditionally denied. Defendants National Fire and

MedPro Group have communicated partial disclaimers of coverage, including a categorical disclaimer of excess insurance applicable to the *Bianchi* lawsuit, to both National Event and ESO. Those disclaimers, taken at face value, support the inference that National Event failed to perform its contractual insurance procurement obligation. On the other hand, National Event's averments in this coverage action contest the disclaimers.

58.     Denied as stated. National Event provided emergency medical services at Lincoln Financial Field pursuant to written emergency medical services *Agreements* with ESO that were effective during contractually specified periods of time.

59.     Admitted. However, Exhibit C is not the contract that was in effect on September 22, 2019.  On September 22, 2019 National Event was under contract with answering defendant ESO to provide Basic and Advanced Life Support emergency medical services, ambulance transportation services and other services for professional football games played at Lincoln Financial Field. A partially redacted copy of the *Agreement [for] Provision of Emergency Medical Services For Lincoln Financial Field* that included an insurance procurement provision found at section VI and was in effect on September 22, 2019 is attached as Exhibit A to the Second Amended Complaint in the *Bianchi* action, August Term 2020, No. 01739 and is incorporated here by reference.

60.     Admitted with qualification. The *Agreement* made between National Event and ESO as of February 27, 2017 for the period from March 1, 2017 to February 28, 2019 also included an insurance procurement provision found at section VI. A partially redacted copy of the *Agreement [for] Provision of Emergency Medical Services For Lincoln Financial Field* that was in effect on September 22, 2019 is attached as Exhibit A to the Second Amended Complaint in the *Bianchi* action, August Term 2020, No. 01739 and is incorporated here by reference.

61.    It is admitted that paragraph 61 quotes accurately but only in part, with non-substantive typographical mistakes, from the insurance procurement provision of the 2017 *Agreement* between ESO and National Event that is attached as Exhibit C.

62.    Answering defendant ESO incorporates here by reference its answers to paragraphs 1, 18 and 33 as set forth above.

63.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 63.

64.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 64.

65.    Admitted upon information and belief.

66.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 66.

67.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 67.

68.    It is admitted that an email is attached as Exhibit J. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient  to admit or deny the remaining averments of paragraph 68.

69.    It is admitted that paragraph 69 partially quotes the text of an email attached as Exhibit J. After reasonable investigation, answering defendant ESO is without sufficient knowledge or information to admit or deny the averments of paragraph 69 concerning the source of the quoted text. Paragraph 69 of the Complaint does not quote from the insurance procurement provision of an *Agreement* for emergency medical services between National Event and ESO.

70.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 70.

71.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 71.

72.     Denied in part as stated. National Fire is the only "Issuing Company" identified in the insurance policies attached as Exhibits to National Event's Complaint. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 72.

73.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 73.

74.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 74.

75.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 75.

76.     Admitted with qualification. It is admitted that primary and excess liability policies issued by National Fire to National Event were in effect on September 22, 2019 and when the *Bianchi* lawsuit was commenced, served and reported to National Fire.

77.     Admitted upon information and belief.

78.     It is admitted that the *Agreements* between National Event Services, Inc. and Eagles Stadium Operator, LLC required procurement of Commercial General Liability and Professional Liability insurance, as well as other types of insurance, in accordance with specifications set forth in section VI of each fixed-term *Agreement*, and ESO was to be listed by name as an additional insured on a primary and non-contributory basis. After reasonable investigation, answering

defendant ESO lacks knowledge or information sufficient to admit or deny the averments that implicate National Event's communications with Defendant Behnke or Defendant Behnke's communications on behalf of National Event with National Fire, whether directly or through an intermediary broker.

79.   After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 79 which implicate National Event's communications with Defendant Behnke.

80.   After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 80 which implicate National Event's communications with Defendant Behnke or Defendant Behnke's communications on behalf of National Event with National Fire, whether directly or through another broker. Answering defendant ESO also incorporates here by reference its answer to paragraph 59 as set forth above.

81.   Answering defendant ESO incorporates here by reference is answer to paragraph 80 as set forth above.

82.   Because this paragraph does not identify the specific policies to which it refers or the specific emergency services *Agreement* to which it refers, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 82, which also include legal conclusions to which no answer need be pleaded.

83.   After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 83 which implicate National Event's communications with Defendant Behnke or Defendant Behnke's communications on

behalf of National Event with National Fire, whether direct or through another broker. The remaining averments of paragraph 83 are legal conclusions to which no answer need be pleaded.

84.    Denied as stated. National Fire is the only "Issuing Company" identified in the policies attached as Exhibits to National Event's Complaint. Answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Healthcare Liability Policy Declarations for the policy attached as Exhibit D is accurately quoted, in part, as to coverage parts selected, limits of liability, and claims-made-and-reported versus occurrence-based insuring agreements.

85.    Denied as stated. National Fire is the only "Issuing Company" identified in the policies attached as Exhibits to National Event's Complaint. Answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Excess Healthcare Liability Policy Declarations for the policy attached as Exhibit G is accurately quoted, in part, as to policy limits for the General Liability Coverage Part on an Occurrence basis and for the Follow Form Coverage Part on an Occurrence or Claims-Made and Reported or Occurrence basis.

86.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 86.

87.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 87.

88.    It is admitted that an email dated March 22, 2018 is attached to the Complaint as Exhibit K. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 88.

89.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 89.

90.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 90.

91.     It is admitted that an email dated March 22, 2018 is attached to the Complaint as Exhibit L. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 91.

92.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 92.

93.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 93.

94.     It is admitted that an email dated March 23, 2018 is attached to the Complaint as Exhibit M. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 94.

95.     It is admitted that an email dated March 23, 2018 is attached to the Complaint as Exhibit N. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 95.

96.     It is admitted that an email dated March 22, 2018 is attached to the Complaint as Exhibit O. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 96.

97.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 97.

98.     It is admitted that three endorsements are attached to the Complaint as Exhibit P. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 98.

99.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 99.

100.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 100.

101.    Admitted.

102.    Denied as stated. National Fire is the only "Issuing Company" identified in the policies attached as Exhibits to National Event's Complaint. Answering defendant ESO is unable to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Healthcare Liability Policy Declarations for the policy attached as Exhibit E is accurately quoted, in part, as to coverage parts selected, limits of liability, and claims-made-and-reported versus occurrence-based insuring agreements.

103.    Denied as stated. National Fire is the only "Issuing Company" identified in the policies attached as Exhibits to National Event's Complaint. Answering defendant ESO is unable to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Excess Healthcare Liability Policy Declarations for the excess policy attached as Exhibit H is accurately quoted, in part, as to policy limits for the General Liability Coverage Part on an Occurrence basis, Professional Liability Coverage Form on a Claims-Made and Reported basis and Follow Form Coverage Part on an Occurrence or Claims-Made and Reported or Occurrence basis.

104.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 104.

105.    It is admitted that an email is attached to the Complaint as Exhibit Q. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 105.

106.    It is admitted that an email is attached to the Complaint as Exhibit R. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 106. .

107.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 107.

108.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 108.

109.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 109.

110.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 110.

111.    It is admitted that an email is attached to the Complaint as Exhibit S. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 111.

112.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 112.

113.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 113.

114.     Admitted.

115.     Denied as stated. National Fire is the only "Issuing Company" identified in the policies attached as Exhibits to National Event's Complaint. Answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Healthcare Liability Policy Declarations for the policy attached as Exhibit F is accurately quoted, in part, as to coverage parts selected, limits of liability, and claims-made-and-reported versus occurrence-based insuring agreements.

116.     Admitted.

117.     Denied as stated. National Fire is the only "Issuing Company" identified in the policies attached as Exhibits to National Event's Complaint. Answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of this paragraph as stated due to the ambiguity of "following coverages." However, it is admitted that the Excess Healthcare Liability Policy Declarations for the excess policy attached as Exhibit I, not Exhibit H, is accurately quoted, in part, as to policy limits for the General Liability Coverage Part on an Occurrence basis, for the Professional Liability Coverage Form on a Claims-Made and Reported basis and for the Follow Form Coverage Part on an Occurrence or Claims-Made and Reported or Occurrence basis.

118.     It is admitted that the policies attached as Complaint Exhibits F and I provide coverage for the *Bianchi* lawsuit.

119.     It is admitted that the policies attached as Complaint Exhibits E and H provide coverage for the *Bianchi* lawsuit.

120.     Admitted.

121.    Admitted.

122.    Admitted with qualification. Insurance coverage also attaches under the Follow Form Coverage Part of the Excess Policy for the Policy Period from 02/01/2020 to 02/01/2021.

123.    Admitted with qualification. At a specific date unknown to ESO, MedPro Group, acting for National Fire, retained defense counsel for National Event and assumed control of the defense.

124.    Admitted with qualification. Upon information and belief, the defense of National Event was assumed, and defense counsel was assigned without an antecedent or contemporaneous disclaimer of coverage or reservation of rights.

125.    Admitted.

126.    Admitted.

127.    Admitted.

128.    Admitted.

129.    Denied as stated. The letter was addressed to counsel for ESO. The remaining averments of paragraph 129 are admitted.

130.    Admitted.

131.    Denied as stated. The letter attached as Exhibit T was copied to personal counsel for National Event, disclaimed the existence of excess coverage applicable to the *Bianchi* lawsuit, and confirmed an oral disclaimer communicated orally to counsel for ESO by telephone on January 5, 2021.

132.    This paragraph is understood in context to refer to the time intervening between commencement of the *Bianchi* lawsuit and January 27, 2021; therefore, the averment is admitted.

133.    This paragraph is understood in context to refer to the time intervening between commencement of the *Bianchi* lawsuit and January 27, 2021; therefore, the averment is admitted.

134.    Denied as stated. The letter attached as Exhibit U was written by counsel for answering defendant ESO.

135.    It is admitted that the letter of January 27, 2021 is attached as Exhibit V. The remaining averments of paragraph 135 are admitted with this qualification: Ms. Orlow's letter of January 12, 2021 had disclaimed the existence of excess insurance coverage for the *Bianchi* lawsuit.

136.    It is admitted that the letter attached as Exhibit V was the first communication from National Fire, ostensibly by its duly authorized claim and underwriting representative, MedPro Group, that set forth the "Issuing Company's" coverage contentions regarding the *Bianchi* lawsuit. Given the length and complexity of the letter its analysis and conclusions can be fully understood only by reading the letter itself. However, sub-parts (a) through (c) of paragraph 136 provide a fair summation of coverage contentions expressed in Exhibit V.

137.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 137 that implicate communications that are part of the underwriting history of the National Event insurance program insured by National Fire.

138.    Admitted with qualification. It is admitted that the coverage analysis and conclusions communicated by MedPro Group regarding the potential application of General Liability coverage are based on a narrow and self-interested construction of the *Bianchi* pleadings – specifically, the Second Amended Complaint, and mis-interpretation of the term **treatment**.

139.    Admitted.

140.     Admitted with qualification. The claims averred in the Complaint, Amended Complaint and the Second Amended Complaint in the *Bianchi* action activate the duty to defend and indemnify National Event and ESO under primary and excess policies issued to National Event by National Fire.

141.     Paragraph 141 avers a legal conclusion to which no answer need be pleaded.

142.     Answering defendant ESO lacks knowledge or information sufficient to admit or deny averments about underwriting history.  Requests by ESO to National Fire and MedPro Group for access to underwriting records and policy applications have been refused. Requests to National Event for an authorization consenting to ESO's access to underwriting records and policy applications have met with no response.

143.     Admitted. The endorsement is ambiguous and incoherent.

144.     After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 144.

145.     It is admitted that an email dated February 3, 2021 is attached as Exhibit W.  After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 145.

146.     Admitted.

147.     Admitted.

148.     It is admitted that a proposal is attached as Complaint Exhibit X.  After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 148.

149.     Paragraph 149 avers a characterization or partial summary of the document attached as Exhibit X to which no answer need be pleaded.

150.    Paragraph 150 avers a characterization or partial summary of the document attached as Exhibit X to which no answer need be pleaded.

151.    Paragraph 151 avers a characterization or partial summary of the document attached as Exhibit X to which no answer need be pleaded.

152.    Paragraph 152 avers a characterization or partial summary of the document attached as Complaint Exhibit X to which no answer need be pleaded.

153.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 153.

154.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 154. No copies of the referenced policies are attached as Exhibits to the Complaint.

155.    It is admitted that a letter dated February 18, 2021 is attached as Exhibit Y. Paragraph 155 otherwise avers a characterization or partial summary of the document attached as Exhibit Y to which no answer need be pleaded.

156.    It is admitted that the letter attached as Exhibit Y includes such a request.

157.    It is admitted that an email is attached as Exhibit Z, and that the email, among other things, declined the request averred in paragraph 156 of the Complaint.

158.    It is admitted that an email attached as Exhibit Z states, among other things, that the referenced excess policy endorsement could have been removed in exchange for an added premium payment. After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the remaining averments of paragraph 158.

159.    After reasonable investigation, answering defendant ESO lacks knowledge or information sufficient to admit or deny the averments of paragraph 159.

160.    Paragraph 160 avers a legal conclusion to which no answer need be pleaded.

161.    Answering defendant ESO incorporates here by reference its answer to paragraph 122 as set forth above.

### Count I – Declaratory Relief

162-284.    The averments of Count I are not directed to answering defendant ESO; therefore, no answer to paragraphs 162 to 284 inclusive need be pleaded for ESO.

### Count II – Negligence

285-321.    The averments of Count II are not directed to answering defendant ESO; therefore, no answer to paragraphs 285-321 inclusive need be pleaded for ESO.

### Count III – Bad Faith

322-343.    The averments of Count III are not directed to answering defendant ESO; therefore, no answer to paragraphs 322-343 inclusive need be pleaded for ESO.

### ESO Counterclaim against National Event Services, Inc.

344.    Defendant Eagles Stadium Operator, LLC ("ESO") brings this Counterclaim pursuant to Rule 13(a) and the court's supplemental jurisdiction under 28 U.S.C. §1367.

345.    Defendant ESO incorporates here by reference its answers to paragraphs 1 through 161 inclusive as set forth above.

346.    Defendant ESO has denied and continues to deny liability for the claims alleged in the underlying *Bianchi* lawsuit.

347.    Without adopting or vouching for the factual or legal averments set forth in the Second Amended Complaint ("Complaint") for the *Bianchi* lawsuit, the factual elements of averments at paragraphs 1-2, 17-20, 28, 47-51, 67 and 69 of the Complaint are incorporated here by reference to contextualize this counterclaim.

24

348.     Plaintiff, National Event, and ESO entered into an *Agreement [for] Provision of Emergency Medical Services For Lincoln Financial Field* (hereafter *Agreement*) for the contract term from March 1, 2019 to February 28, 2021.

349.     A partially redacted copy of the *Agreement* referred to in the preceding paragraph is attached as Exhibit A to the Second Amended Complaint in the *Bianchi* action (Philadelphia Court of Common Pleas, August Term 2020, No. 01739), and is incorporated here by reference. An unredacted copy of section VI of the *Agreement* is attached hereto as Exhibit ESO1.

350.     Section VI of the *Agreement* set forth minimum requirements and coverage specifications for the procurement by National Event of liability insurance, including primary and excess professional liability and general liability insurance naming ESO and others as additional insureds on a primary and non-contributory basis.

351.     After service of the original complaint for the *Bianchi* lawsuit, ESO tendered the action for defense and indemnity to National Event and through National Event to its liability insurance company, National Fire & Marine Insurance Company ("National Fire.").

352.     National Fire has denied that it issued an excess policy of professional liability or general liability insurance available to respond to any claim or suit alleging personal injury due to National Event's rendering or failure to render emergency medical services at Lincoln Financial Field.

353.     National Fire has also denied that excess claims-made Professional Liability Insurance for the Policy Period from 02/01/2020 to 02/01/2021 and naming ESO as an additional insured was requested by National Event.

354.    National Fire has issued a coverage disclaimer contending that National Event requested and was provided excess claims-made Professional Liability Insurance that was in effect for the Policy Period from 02/01/2020 to 02/01/2021 but that such insurance is strictly limited to a schedule of listed events that does not include professional football games at Lincoln Financial Field. The disputed excess professional liability insurance was added, according to National Fire and MedPro Group, by an endorsement titled "Restricted Practice – Covered Practice Endorsement (Professional Liability)" which by its terms expressly adds an exclusion and does not amend or modify an insuring agreement.

355.    A promisor who, like National Event, enters into a contract to obtain liability insurance and neglects to fulfill the obligation becomes an insurer and liable as such for the full amount of the damages sustained by the non-breaching party that is caused by the failure to procure such insurance.

356.    National Fire's excess coverage disclaimer premised on its assertions that  it did not issue excess professional liability insurance to National Event applicable to a claim or suit alleging personal injury due to National Event's rendering or failure to render emergency medical services at Lincoln Financial Field and that no such coverage was requested by National Event, taken as true, establish that National Event breached the insurance procurement provision of its emergency medical services *Agreement* with ESO.

357.    If the excess professional liability coverage disclaimer issued by National Fire through its apparent agent, MedPro Group, is upheld by the court, then ESO seeks a declaration that National Event is liable to indemnify ESO up to the same amount as the limits of excess

insurance that was not procured  as required by the emergency medical services *Agreement* in effect on September 22, 2019 and when the *Bianchi* lawsuit was served on ESO in August 2020.

WHEREFORE, Defendant Eagles Stadium Operator, LLC ("ESO") seek a declaration that National Event Services, Inc. is liable for amounts that would be payable on behalf of ESO in the *Bianchi* lawsuit under excess liability insurance required by and compliant with section VI of the applicable emergency medical services *Agreement*.

**RICCI TYRRELL JOHNSON & GREY**

By:  *s/ John E. Tyrrell,*
John E. Tyrrell, Esq.
Identification No.: 56618
1515 Market St., Suite 1800
Philadelphia, PA 19102
(215) 320-3260
jtyrrell@rtjglaw.com
*Attorney for Defendant, Eagles Stadium Operator, LLC*

## CERTIFICATE OF SERVICE

I, John E. Tyrrell, Esquire, hereby certify that on November 3, 2021, a copy of Defendant

Eagles Stadium Operator, LLC's (incorrectly identified as The Philadelphia Eagles and Lincoln

Financial Field) Answer with Counterclaim was served upon all parties via electronic filing.

James C. Haggerty, Esquire
Haggerty, Goldberg, Schleifer &
Kupersmith, P.C.
1801 Market Street, Suite 1100
Philadelphia, PA 19103
jhaggerty@HGSKLawyers.com
*(Attorney for Plaintiff, National Event Services, Inc.)*

Allison B. Goldis, Esquire
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
AGoldis@cozen.com
*(Attorneys for Peter Behnke, Integro Group, Epic Insurance Brokers & Advisors and Edgewood Health Care Advisors)*

Nicole C. Wixted, Esquire
Jessica E. Loesing, Esquire
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
nicole.wixted@faegredrinker.com
jessica.loesing@faegredrinker.com
*(Attorney for CRC Group)*

Michael Mongeluzzi, Esquire
Barrett Deangelo
380 Beagle Road
West Chester, PA 19382
joe@barrettdeangelo.com
mike@barrettdeangelo.com
*(Attorney for Maurizio Bianchi, Administrator of the Estate of Marco Bianchi, Deceased, in his own right and on behalf of decedent's next of kin and Alex Bianchi)*

R. Brando McCullough, Esquire
Brian D. Lipkin, Esquire
Houston Harbaugh, P.C.
Three Gateway Center, 22nd Floor
401 Liberty Avenue
Pittsburgh, PA 15222
Mcculloghb&hh-law.com
blipkin@hh-law.com
*(Attorneys for Defendants, National Fire & Marine Insurance Company, MedPro Group and Barri Orlow)*

*s/ John E. Tyrrell,*
John E. Tyrrell, Esq.