IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL EVENT SERVICES, INC., | : Civil Action No.: 2:21-cv-04423-GAM |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| NATIONAL FIRE & MARINE | : |
| INSURANCE COMPANY; | : |
| MEDPRO GROUP; | : |
| PETER BEHNKE; | : |
| EDGEWOOD HEALTH CARE ADVISORS; | : |
| INTEGRO GROUP; | : |
| EPIC INSURANCE BROKERS & | : |
| ADVISORS; | : |
| CRC GROUP; | : |
| MAURIZIO BIANCHI, ADMINISTRATOR | : |
| OF THE ESTATE OF MARCO BIANCHI, IN | : |
| HIS OWN RIGHT, AND ON BEHALF OF | : |
| DECEDENT'S NEXT OF KIN; | : |
| ALEX BIANCHI; | : |
| THE PHILADELPHIA EAGLES; | : |
| LINCOLN FINANCIAL FIELD; | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## NATIONAL FIRE & MARINE INSURANCE COMPANY AND MEDPRO GROUP'S BRIEF IN SUPPORT OF MOTION TO SEVER AND STAY BAD FAITH CLAIM

Defendants National Fire & Marine Insurance Company ("NF&M") and MedPro Group ("MedPro") submit this Brief in support of their Motion to Sever and Stay Bad Faith Claim.

## I.    Introduction

This action involves claims for insurance coverage under primary and excess liability policies for an ongoing underlying state court wrongful death action (the "Bianchi Action" or "Underlying Action") currently pending against Plaintiff in this action, National Event Services,

Inc. ("NES"), and a defendant in this action, Eagles Stadium Operator, LLC (incorrectly named The Philadelphia Eagles and Lincoln Financial Field) ("ESO"). Defendant NF&M is currently defending both NES and ESO in the Bianchi Action. Notwithstanding, NES filed this action asserting claims against NF&M and MedPro for declaratory judgment (count I), seeking a declaration that, among other things, it has available coverage limits of $10 million ($1 million primary; $9 million excess) rather than $1 million ($1 million primary) for the Bianchi Action. Alternatively, NES asserts claims against its insurance agents and brokers for negligence (count II) for allegedly failing to procure $10 million in available limits rather than $1 million in available limits. Additionally, NES asserts a separate claim for common law and statutory bad faith (count III) against NF&M and MedPro related to their investigation and evaluation of the coverage issues and the defense of the Bianchi Action. NES added the underlying plaintiffs (the "Bianchis") and ESO as defendants in this action.

Under Federal Rule of Civil Procedure 21, this motion seeks to sever and stay the bad faith claim (count III) for multiple reasons. First, the bad faith claim is distinct from the other claims in this action. The coverage claims and claims against the brokers involve issues of contract formation pre-dating the incident giving rise to the Bianchi Action, while the bad faith claim involves the post-incident coverage determinations for and defense of the Bianchi Action. Second, severance promotes efficiency, expediency, and simplicity because it will facilitate the resumption of discovery that is currently at a standstill due to complex privilege and work product issues, narrow the relevant issues applicable to all parties, and expedite the final resolution for most parties to this action. Third, NF&M, MedPro, NES, ESO and perhaps other parties will all be severely prejudiced if the bad faith claim is not severed as discovery on the bad faith claim necessitates disclosure to parties to the Bianchi Action of documents related to the defense of the Bianchi

Action (including insurance claim files which contain communications with defense counsel in the Bianchi Action), which are protected on privilege, work product and confidentiality grounds. The prejudice involved in simultaneous litigation of the bad faith claim, the contractual insurance claim, and the failure-to-procure claim against the brokers, along with the Bianchi Action, is real and imminent and necessitates severing and staying the bad faith claim.

## II.   **Factual and Procedural Background**

In this case, NES seeks insurance coverage for an underlying wrongful death action currently pending in the Philadelphia Court of Common Pleas. On September 22, 2019, Marco Bianchi attended a Philadelphia Eagles game at Lincoln Financial Field when he suffered a medical emergency. NES provided emergency medical services at the game. In the Bianchi Action, Marco Bianchi's estate and relatives allege that he died because NES and ESO responded inappropriately to his medical emergency. *See* ECF No. 23-1 (Bianchi's Second Amended Complaint). The Bianchis asserted claims against both NES and ESO in the Bianchi Action. *Id.* ESO has also asserted crossclaims against NES in the Bianchi Action. *See* Answer of ESO with Crossclaims, attached hereto as **Exhibit 1**. The Bianchi Action remains ongoing. Presently, the parties to the Bianchi action are involved in fact discovery, and the case is expected to be ready for trial by June 5, 2023. *See* the current case management order in the Bianchi Action attached hereto as **Exhibit 2**.

NF&M issued to NES a Healthcare Liability Policy (the "Primary Policy"), which includes a general liability coverage part and a professional liability coverage part, subject to a $1 million limit per event. NF&M also issued to NES an Excess Healthcare Liability Policy ("Excess Policy"), which has a $9 million limit per event. *See* ECF No. 1-3, ¶¶ 33, 35, 44-45. Currently, NF&M is defending NES against the Bianchi Action under the professional liability coverage part

of the Primary Policy. *Id.* at ¶ 123. NF&M is also separately defending ESO as an additional insured under the professional liability coverage part of the Primary Policy. *Id.* at Exhibit V. NF&M denied coverage under the general liability and excess liability coverages because they do not apply to the Bianchi Action. *Id* at ¶¶ 135-136 and Exhibit V. Separate defense counsel has been retained by NF&M to represent NES and ESO in the Bianchi Action. NF&M maintains separate claim files for the defense of both NES and ESO.

NES seeks a declaration (count I) in this action that, in addition to the defense it is currently receiving under the professional liability coverage, it is also entitled to general liability and excess liability coverage. *Id.* at count I. Specifically, NES asserts that it is entitled to $1 million under the Primary Policy and $9 million under the Excess Policy, for a total of $10 million in coverage. *Id.* at ¶¶ 35, 45. NES asserts alternative claims (count II) against its insurance agents and brokers – Defendants Peter Behnke, Edgewood Healthcare Advisors, LLC (i/s/h/a Edgewood Health Care Advisors), Integro USA, Inc. d/b/a Integro Insurance Brokers (i/s/h/a Integro Group), Edgewood Partners Insurance Center, Inc. d/b/a EPIC Insurance Brokers & Consultants (i/s/h/a EPIC Insurance Brokers & Advisors) and CRC Insurance Services, Inc. (improperly named as CRC Group) (collectively the "broker defendants") – for negligently failing to procure proper insurance coverage if it is found coverage does not exist under the general liability and excess liability coverages. *Id.* at count II. Counts I and II involve the construction of the terms of the policies; the actions by and correspondence among the insurer, insured, and brokers in procuring coverage; underwriting and modification of the policies; and, alleged discrepancies between NES's alleged intent and the final policy terms.

In count III, NES alleges that NF&M and MedPro committed common law and statutory bad faith in connection with the handling of claims asserted in the Bianchi Action. *Id.* at Count III.

4

Specifically, under its bad faith count, NES alleges that NF&M and MedPro have acted in bad faith by, among other things, wrongfully denying general liability and excess liability coverage and involving defense counsel retained to defend NES in the Bianchi Action (Kevin Wright, Esquire) in coverage issues. *Id.* at ¶¶ 146, 338. Under the bad faith count, NES seeks damages for consequential damages (including alleged lost profits and damage to reputation), interest, attorney fees, costs and punitive damages. *Id.* at ¶¶ 333, 337, 339. Consequently, the bad faith claim places directly at issue NF&M's post-claim investigation and evaluation of the Bianchi Action, defense counsel's conduct in the Bianchi Action, and financial information of NES.

In this action, the parties have met and conferred regarding multiple discovery issues that have arisen involving information protected by the attorney-client privilege and work product doctrine, and which otherwise may be maintained as confidential from certain parties (including parties to both this action and the Underlying Action, such as the Bianchis, ESO and NES). To date, the parties have not agreed on these issues, which has prevented the parties from producing documents to date and put discovery at a standstill. The parties jointly requested, and this Court issued, an amended scheduling order extending fact discovery and other deadlines in this case to allow for consideration of this motion. *See* ECF Nos. 59 and 60.

Specifically, the following discovery issues, among others, have arisen among the parties:

a. Several parties have served discovery requests seeking NF&M and/or MedPro's complete insurance claim files for the defense of NES in the Bianchi Action, which contain privileged information exchanged among NES, NF&M and/or MedPro, and counsel retained by NF&M and/or MedPro to defend NES in the Bianchi Action.[1] Certain parties

---

[1] By way of example, the following documents have been requested:
- NES requested from NF&M and MedPro "[t]he entire claim file with respect to all claims arising from the September 22, 2019 incident including all log notes, communications, letters, emails, analyses, coverage recommendations or other information or documentation pertaining to the incident forming the basis of the underlying claim whether in electronic or paper form," and "[a]ny and all communications by and among National Fire & Marine Insurance Company, MedPro Group, Barri Orlow and Kevin Wright, Esquire in connection

contend that NES and its insurer NF&M may suffer unfair prejudice in the defense of the Bianchi Action if parties to the Bianchi Action, including the Bianchis and ESO (which has crossclaims against NES), receive access to documents and information on that issue, which are protected on privilege, work product and/or confidentiality grounds from those parties. For example, if the Bianchis receive access to the mental impressions of NES's defense counsel the Bianchis may gain an unfair advantage in litigating the Bianchi Action. On the other hand, a preclusion of discovery of these issues may potentially prejudice NF&M and/or MedPro in its defense against NES's bad faith claim.

b.  Several parties have served discovery requests seeking NF&M and/or MedPro's complete insurance claim files for the defense of ESO in the Bianchi Action, which contain privileged information exchanged among ESO, NF&M and/or MedPro, and counsel retained by NF&M and/or MedPro to defend ESO in the Bianchi Action.[2] Certain parties contend that ESO and its insurer NF&M may suffer unfair prejudice in the defense of the Bianchi Action if parties to the Bianchi Action, including the Bianchis and NES, receive access to documents and information on that issue, which are protected on privilege, work product and/or confidentiality grounds from those parties.

c.  Several parties have served discovery requests seeking NES's financial information that is in the possession of multiple parties, including NF&M and/or MedPro, NES, and various broker defendants, which may prejudice NES in defending the Bianchi Action.[3] Such information may contain confidential business information of NES that may not be subject to discovery in the Bianchi Action, particularly in light of alleged punitive damage claims asserted against NES in the Bianchi Action.

---

with the September 22, 2019 incident and the claims arising therefrom." *See, e.g.,* NES's Requests to NF&M, attached hereto as **Exhibit 3**, at RPD Nos. 3 & 8.

- EPIC requested from NF&M and MedPro "[a] complete copy of Your claim file(s) with respect to the Underlying Lawsuit." *See* EPIC Requests to NF&M and MedPro, attached hereto as **Exhibit 4**, at RPD 7.

[2] See the same examples cited in footnote 1.

[3] By way of example, the following documents have been requested:

- NF&M and MedPro requested from NES the following: "[a]ll Documents relating to and/or evidencing the "loss of profits" You have sustained as alleged in paragraphs 318, 332 and 333 of Your Complaint," "[a]ll Documents relating to and/or evidencing the "damage to the reputation of National Event caused by the adverse publicity accompanying the cancellation of the Eagles Contract" as alleged in paragraph 333 of Your Complaint," "[a]ll Documents relating to the alleged financial harm to NES as a result of the Claim or National Fire and Marine and/or MedPro's handling of the Claim," "[a]ll of NES's tax returns for the year ending 2018 through the present," "[a]ll of NES's financial statements and profit and loss statements for the year ending 2018 through the present," and "[a]ll Documents that reflect NES's financial position between January 1, 2018 and the present." *See* NF&M and MedPro's Requests to NES, attached hereto as **Exhibit 5**, at RPD Nos. 35, 36, 39-42.

As explained below, given the multiple parties involved and the complicated privilege, work product, and confidential information issues at play, severance and stay of the bad faith claim is appropriate to allow discovery and disposition of the coverage and negligence claims to move forward.

## III.  <u>Legal Standard</u>

NF&M and MedPro seek to sever NES's bad faith claim under Rule 21 of the Federal Rules of Civil Procedure. The rule states, in pertinent part, that the Court may "sever any claim against a party." Fed. R. Civ. P. 21. Severance is subject to the trial judge's discretion. *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978). "The court has wide latitude in deciding whether to sever and stay proceedings by weighing the competing interests of the parties and attempting to maintain a fair balance." *Griffith v. Allstate Ins. Co.*, 90 F.Supp.3d 344, 346 (M.D. Pa. 2014).

> Rule 21 is titled "Misjoinder and Non-Joinder of Parties." However, it may be used to organize problematical issues other than joinder problems. . . . Whether severance is warranted requires balancing of several considerations, including the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation. Specific factors are (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted.

*Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation, quotation marks, and some paragraphing omitted). Courts regularly consider the same factors in evaluating a motion to sever and a motion to bifurcate claims under Fed. R. Civ. P. 42(b). *McFarland, LP v. Harford Mut. Ins. Cos.*, 2019 WL 3336982, at *2 (M.D. Pa. 2019).

Severance pursuant to Rule 21 creates independent actions resulting in separate judgments from which an appeal may be taken. *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999; *United States ex rel LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 231

n.3 (3d Cir. 1998). "Severance is appropriate when the claims at issue are 'discrete and separate,' each capable of resolution without dependence or effect on the other." *See McFarland,* 2019 WL 3336982, at *2 (citing *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006)).

Moreover, district courts have broad power to stay proceedings. *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp v. Local 215, Laborers' Intern. Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976).

## IV. <u>Argument</u>

NES's bad faith claim (count III) against NF&M and MedPro should be severed and stayed. The bad faith claim puts the defense of the Bianchi Action squarely at issue, and would require production of work product, attorney-client privileged, and otherwise confidential information to the Bianchis and other parties, in ways that would prejudice the defense. The declaratory judgment and negligence claims, however, are distinct and require separate evidence from the bad faith claim. Those claims involve issues of contract formation and interpretation, rather than the defense of the Bianchi Action. Severance, or in the alternative, bifurcation, will avoid prejudicing the rights of the parties to this case, including NES, ESO, NF&M and MedPro, and will promote judicial economy. *See Nyazie v. Kennedy*, 1998 WL 472504, at *3 (E.D. Pa. 1998) (bifurcating liability and damages issues to promote "the interests of expedition and judicial economy").

For these reasons, courts regularly sever (or bifurcate) bad faith claims from coverage-based claims, particularly where doing so will promote efficient resolution of the coverage claims and will avoid unnecessary disclosure of privileged information. *See, e.g., McFarland,* 2019 WL 3336982, at *4 (granting insurer's motion to stay and bifurcate bad faith claim); *Gramaglia-Parent*

*v. Travelers Home & Marine Ins. Co.*, 2020 WL 7624836, at * 2 (E.D. Pa. 2020) (granting motion to bifurcate and stay bad faith claim); *Corley v. National Indemnity Co.*, No. 2016-00584 (ECF 55) (E.D. Pa. Sept. 9, 2016) (granting insurer's motion to bifurcate and stay bad faith claim); *Federal Ins. Co. v. Continental Cas. Co.*, 2006 WL 1344811 (W.D. Pa. May 16, 2006) (granting insurer's motion to bifurcate and stay bad faith claim); *Dunkelberger v. Erie Ins. Co.*, 2011 WL 7678646 (CCP Lebanon Cty. Jan. 24, 2011) (severing and staying bad faith claim).

## A.    The Bad Faith Claim is Distinct from the Other Claims

In this case, the bad faith claim is distinct from the declaratory judgment and negligence claims. *See McFarland*, 2019 WL 3336982, at *3 ("There may be some minor overlap, but in general the issues underlying the coverage dispute are separate and distinct from those implicated by the bad faith claim."). Unlike the coverage issues which this Court previously recognized "is principally one of contract formation" that has "profound practical implications for resolution of the underlying tort case," s*ee* ECF 49, the bad faith claim implicates post-claim conduct and the actual defense of the Bianchi Action. *See Gramaglia-Parent v. Travelers Home & Marine Ins. Co.*, 2020 WL 7624836, at * 2 (E.D. Pa. 2020) (granting bifurcation of bad faith claim finding it distinct from contract claim). The coverage issues and claims against the brokers requires evidence concerning the underwriting and contract formation of the policies at issue. Conversely, the bad faith claim relates to NF&M's post-claim investigation and evaluation of the Bianchi Action after it was filed and NF&M's defense of NES in the Bianchi Action. Indeed, the bad faith claim places the conduct of defense counsel defending NES in the Bianchi Action, Kevin Wright, Esquire, directly at issue as NES alleges that NF&M and MedPro are in bad faith for allegedly involving Mr. Wright in coverage issues (an allegation NF&M and MedPro deny). *See* ECF No. 1-3, ¶¶ 146, 338. Consequently, evidence relevant to the bad faith claim includes information contained within

several insurance claim files not otherwise discoverable in relation to the other claims in this case or within the context of the Bianchi Action, financial information and valuations, and confidential communications among counsel, claim adjusters, and NES and ESO. It also includes evidence focusing on the knowledge and motives of the insurer in making its coverage determinations. *See Marshall v. Nationwide Mut. Ins. Co.*, 1994 WL 263776, at *1 (E.D. Pa. 1994) (explaining that a bad faith claim "deals with the manner in which [the insurance company] handled Plaintiff's claim" such that the "strategy, mental impressions, and opinions of [the insurance company's] agents concerning the handling of the claim are directly at issue."); *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 346, 365 (Pa. 2017) ("in order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis").

Additionally, the bad faith claim differs temporally from the other claims. The coverage issues and negligence claim involve communications facilitated among NES, the broker defendants, and NF&M and/or MedPro from 2017-2019 – pre-dating the incident giving rise to the Bianchi Action. Conversely, the bad faith claim involves the defense and handling of the specific claims asserted in the Bianchi Action after the September 22, 2019 incident and service of the underlying complaint in the Bianchi Action. Therefore, the bad faith claim requires evidence different from that of the other claims in terms of the focus, time period, and witnesses involved. *McFarland*, 2019 WL 3336982, at *3 (finding coverage dispute and bad faith claim involved distinct issues, which weighed in favor of separating the claims).

The presence of differing temporal and factual predicates underlying the bad faith claim militates in favor of severance and stay.

**B.      Severance Will Be More Efficient for Both the Court and Multiple Parties**

Severance and a stay of the bad faith claim in this case will serve judicial economy in many ways, including simplifying and expediting discovery on the coverage and negligence claims, facilitating final resolution for most parties (who have interest only in the coverage or negligence claims), and narrowing the issues and discovery applicable to those parties. Moreover, granting severance and a stay of the bad faith claim will expedite resolution of the key coverage issues and, in turn, potentially the disposition of the underlying Bianchi Action.

Severance is beneficial where the case involves complex issues and separating the claims expedites resolution of certain claims. *See Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 115 (3d Cir. 1992) (affirming bifurcation of issue that involved "lengthy evidence" and "complex issues"). Here, not only is the coverage issue complex, involving multiple issues regarding the formation, modification, and interpretation of the policies, but the bad faith claim adds complex issues of attorney-client privilege, work product and confidentiality protections, and the interplay and implications of discovery concerning the ongoing Bianchi Action. Severing and staying the bad faith claim will alleviate these complex discovery concerns and allow discovery on the coverage and negligence claims, for which all parties have an interest, to proceed.

Significantly, most parties to this suit have interest only in the coverage-related issues raised by the declaratory judgment and negligence claims. *See Federal Ins. Co.*, 2006 WL 1344811 (bifurcating bad faith claim and agreeing to resolve declaratory judgment claims first because they "are the *only* claims that involve *all* of the Plaintiffs and *all* of the Defendants"); *Am. Nat'l Red Cross v. Travelers Indem. Co. of R.I.*, 924 F. Supp. 304, 308 (D.D.C. 1996) (granting bifurcation where codefendants "only play one part in this trial," and therefore "considerations of fairness and efficiency militate toward allowing trial of that one party before continuing on"). Here, various

parties, such as the Bianchis and ESO, were joined as defendants solely for their interest in the insurance coverage determination. ESO's counterclaim against NES involves the insurance coverage NES contracted to provide for Eagles games at Lincoln Financial Field. *See* ECF No. 19 at ¶¶ 348-57. Additionally, Count II pertaining to the broker defendants is pled in the alternative if coverage is not found, thus they similarly have an interest in the contract formation and coverage determination.

In contrast, the only parties with interests in the bad faith claim are NES and NF&M and/or MedPro. Indeed, it makes little sense to involve the broker defendants, ESO or the Bianchis in a bad faith claim that is solely between NES and NF&M/MedPro. Including those parties in the litigation of the bad faith claim will create unnecessary time and expense for those parties.

As outlined above, discovery in this case is at a standstill due, in large part, to the complex issues associated with attorney-client privilege and the work product doctrine. These issues pertain primarily to discovery associated with the bad faith claim. Specifically, requests may be privileged as to some parties in this case but not to others. For example, in connection with its bad faith claim, NES may be entitled to obtain portions of NF&M and/or MedPro's claim file relating to the defense of the Bianchi Action – but it would be disastrous for the Bianchis themselves, who are also parties to this case, to obtain the claim file as it contains significant information relating to strategy in the defense of the Bianchi Action. Equally harmful would be NES and ESO's acquisition of insurance claim files for the defense of each (containing defense counsel's communications, analysis and strategy from the ongoing Bianchi Action) where ESO asserts crossclaims against NES in the Bianchi Action. On the other hand, NF&M and MedPro need to rely upon information in the claim files to defend against NES's bad faith claim. Consequently, severance and a stay on discovery of the bad faith claim will simplify and expedite litigation on

all other claims for all parties in this case and promote swift resolution in the Bianchi Action. *See Nyazie*, 1998 WL 972504, at *3 (litigating bad faith after liability determination narrows issues, expedites litigation, and promotes judicial economy).

Furthermore, severance with a stay on discovery of the bad faith claim will promote judicial economy by conserving resources where resolution of the coverage issues has the real potential to render the bad faith claim moot. *See Gramaglia-Parent*, 2020 WL 7624836, at *2 (separating and staying bad faith claim was warranted where most bad faith allegations relate to the coverage question and may become moot). The bad faith claim is based, at least in part, on the denial of coverage under general liability and excess liability coverages for the claims asserted in the Bianchi Action. In the event NF&M and MedPro are found correct on their coverage determinations, such claims of bad faith will also necessarily fail and become moot. *See Hemphill v. Landmark Am. Ins. Co.*, 2020 WL 3871295, at *13 (E.D. Pa. 2020) (**McHugh, J.**) ("Because I have concluded that [the insurance company] acted in accordance with the terms of the policy, it cannot be deemed to have acted in bad faith."); *see also Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999) (affirming that where no coverage existed, insurance company could not be liable for bad faith). Even if a bad faith claim remained after coverage is decided, at a minimum, a determination of the coverage issues would vastly narrow the scope of any discovery that may be needed on a bad faith claim, thereby expediting discovery and litigation of the bad faith claim for the parties and the Court. *See Moninghoff v. Tillet*, 2012 WL 12127138 (E.D. Pa. 2012) (granting separation of claims and stay on discovery for bad faith claim due to potential for bad faith claim either becoming moot or morphing focus as coverage case is litigated). Thus, irrespective of this Court's ultimate coverage determination, granting severance and stay of the bad faith claim will promote efficiency for the Court and the parties.

**C.     Multiple Parties will Suffer Prejudice if the Bad Faith Claim is Not Severed and Stayed**

Severance and a stay of the bad faith claim will not unduly prejudice any party. However, failure to sever and stay the bad faith claim will severely prejudice multiple parties, including NES, ESO, NF&M and MedPro. Other remedies are inadequate to remedy the substantial prejudice which will result if severance and stay on discovery of the bad faith claim is denied because revelation of the confidential and privileged information at issue cannot be undone.

The bad faith claim places attorney-client communications and work product protected information directly at issue. Litigating the bad faith claim together with all other claims would cause the disclosure of documents related to the defense of the underlying Bianchi Action to parties to the Bianchi Action who would not otherwise be entitled to such discovery. As explained above, this case involves insurers, the policyholder, an additional insured, various brokers involved with procuring the insurance policies at issue, and the underlying plaintiffs. Forcing NF&M and MedPro to produce documents protected by the attorney-client privilege and work product doctrine, particularly those contained in insurance claim files and defense counsel files, will cause various parties, including NES and ESO, to suffer substantial and irreparable harm. Indeed, disclosing such discovery will provide the parties to the underlying case with a roadmap to the other parties' litigation strategy.

Moreover, a protective order precluding discovery would not address the issues in this case, as NF&M and MedPro must rely upon the material in the claim files to defend against the bad faith claim because it places the defense of the Bianchi Action directly at issue. An insurer is entitled to discovery of an underlying defense file and communications between an insured and its defense counsel in a bad faith action, particularly where the insurer retained and is paying for defense counsel to provide a defense to the insured. *See First Fidelity Bankcorp. v. National Union Fire*

*Ins. Co. of Pittsburgh, PA*, 1992 WL 55742 (E.D. Pa. Mar. 13, 1992) (permitting insurer to discover all documents generated in connection with the underlying litigation as insured placed the documents at issue by bringing suit); *Truck Ins. Exch. v. St. Paul Fire & Marine Ins. Co.*, 66 F.R.D. 129 (E.D. Pa. 1975) (ordering discovery of defense lawyer's file and deposition because insured cannot ask its insurer to pay attorney's fees but not produce the work used to generate those fees); *Northwood Nursing & Convalescent Home, Inc. v. Continental Ins. Co.*, 161 F.R.D. 293 (E.D. Pa. 1995) (ordering production of documents from insured's underlying defense counsel in suit insurer was defending under reservation of rights). In the event that the bad faith claim is not severed and stayed, in order to defend against the bad faith claim, NF&M and MedPro would potentially be forced to disclose privileged and otherwise protected information in its possession related to the defense of the underlying case to parties that would not otherwise be entitled to receive such information, which would potentially severely prejudice not only NF&M and MedPro, but also NES and ESO. Severance and stay of the bad faith claim would avoid this issue.

The bad faith claim implicates the defense of the Bianchi Action itself, as well as financial resources of NES due to alleged lost profits and reputational harm. *See* ECF No. 1-3, at ¶¶ 332-334). Here, NES may obtain its respective claim files and produce its financial information in discovery, but would suffer prejudice if such discovery is produced to other parties to this case (particularly the Bianchis). In addition, because ESO and NES are litigating claims against each other in both this and the Bianchi Action, the disclosure of each other's claim files to the other party would be prejudicial. Disclosing both the ESO and NES claims files to the Bianchis is also prejudicial as it gives the underlying plaintiffs information regarding both defense strategies – a preview of the "game plan" that would otherwise be undiscoverable but for the Bianchis' interest as nominal parties in the coverage determination. *McFarland*, 2019 WL 3336982, at *3

(concluding that the "inequitable preview" of the party's game plan "could not be undone"). While the Bianchi Action remains unresolved, the unavoidable and guaranteed result is virtually *per se* prejudice to multiple parties.

While severance and a stay on discovery for the bad faith claim may subject NES, NF&M and MedPro to "the time and expense of having to participate in two separate rounds of discovery (and inevitable motion practice) accompanied by two separate jury trials," *Wagner v. Allstate Ins. Co.*, 2016 WL 233790, at *3 (E.D. Pa. 2016), the economic value is outweighed by the detrimental and irreparable effects that disclosure would cause in this case. It is also outweighed by the efficiencies severance and stay will create for *all* parties to the case as explained above. Severance will narrow the issues in which all parties hold an interest, revitalize the expeditious resolution of coverage determinations, and avoid attorney-client and work product disputes created by simultaneous discovery of coverage and bad faith claims. *See AstenJohnson v. Columbia Cas. Co.*, 2006 WL 1791260, at *3 (E.D. Pa. 2006) (separating declaratory judgment and bad faith claims to avoid prejudice to parties not subject to bad faith claim).

### D.    Severance is Most Appropriate in This Case

Under the facts of this case, severance is most appropriate; in the alternative, bifurcation is requested. As explained above, when claims are severed pursuant to Rule 21, the claims become independent actions with separate final judgments. *White*, 199 F.3d at 145, n.6. Bifurcation under Rule 42(b), however, separates elements of a complaint but otherwise retains the claims under one action with one judgment. Practically, under the facts of this case, bifurcation would result in a judgment on the coverage issues, from which no party may appeal until final resolution of the bad faith claim. This would again cause significant prejudice to the multiple parties that have no interest in the bad faith claim. *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 468 (E.D. Pa.

2013) ("A claim that is bifurcated under [Rule 42(b)] is not final and appealable as long as other claims in the case remain unresolved."). Severance with a stay, on the other hand, allows NES, NF&M, and MedPro to litigate separately the bad faith claim following the disposition of the coverage and negligence claims.

**V.    <u>Conclusion</u>**

The bad faith claim against NF&M and/or MedPro should be severed and stayed pending the conclusion of the declaratory judgment (count I) and negligence (count II) claims. In the alternative, the bad faith claim should be bifurcated from the remainder of the current action, with a stay on discovery. The bad faith claim is separate from that of the remaining claims involving insurance coverage and procuring insurance coverage. The only parties to the bad faith claim are NES, NF&M, and MedPro. Severance will promote judicial economy by expediting discovery on the coverage-related claims and allowing any appeals regarding those claims to proceed immediately. Severance will narrow the scope of discovery and the parties entitled to receive it, resolve the current stagnation of discovery arising from attorney-client, work product, and confidentiality problems associated with the bad faith claims, and eliminate the time and expense of prolonged litigation for all parties and the Court.

Dated: November 17, 2022        Respectfully submitted,

HOUSTON HARBAUGH, P.C.

*/s/ R. Brandon McCullough*
R. Brandon McCullough
PA ID No. 208563
Brian D. Lipkin, Esquire
PA ID No. 327913
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
mcculloughb@hh-law.com
blipkin@hh-law.com

*Counsel for Defendants*
*National Fire & Marine Insurance Company and*
*MedPro Group*

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **NATIONAL FIRE & MARINE INSURANCE COMPANY AND MEDPRO GROUP'S BRIEF IN SUPPORT OF MOTION TO SEVER AND STAY BAD FAITH CLAIMS** was e-filed through the CM/ECF system, which will send notice to all counsel of record, this 17th day of November, 2022.

| | |
|---|---|
| James C. Haggerty, Esquire<br>Dennis Coyne, Esquire<br>Haggerty, Goldberg, Schleifer &<br>Kupersmith, P.C.<br>1801 Market Street, Suite 1100<br>Philadelphia, PA 19103<br>jhaggerty@HGSKLawyers.com<br>DCoyne@HGSKLawyers.com<br>*(Attorney for Plaintiff, National Event Services, Inc.)* | Allison B. Goldis, Esquire<br>Cozen O'Connor<br>1650 Market Street, Suite 2800<br>Philadelphia, PA 19103<br>AGoldis@cozen.com<br><br>Laura B. Dowgin, Esquire<br>Melissa F. Brill, Esquire<br>Cozen O'Connor<br>3 WTC, 175 Greenwich Street, 55th Floor<br>New York, NY 10007<br>LDowgin@cozen.com<br>MBrill@cozen.com<br><br>*(Attorneys Defendants Edgewood Partners Insurance Center d/b/a EPIC Insurance Brokers & Consultants, Edgewood Healthcare Advisors, LLLC, Integro USA, Inc. and Peter Behnke)* |
| Nicole C. Wixted, Esquire<br>Jessica E. Loesing, Esquire<br>Louise Bonner, Esquire<br>Faegre Drinker Biddle & Reath LLP<br>One Logan Square, Suite 2000<br>Philadelphia, PA 19103<br>nicole.wixted@faegredrinker.com<br>jessica.loesing@faegredrinker.com<br>louise.bonner@faegredrinker.com<br>*(Attorney for CRC Insurance Services, Inc.)* | Michael F. Barrett, Esquire<br>Joseph G. DeAngelo, Esquire<br>Michael Mongeluzzi, Esquire<br>Barrett Deangelo<br>380 Beagle Road<br>West Chester, PA 19382<br>michael@barrettdeangelo.com<br>joe@barrettdeangelo.com<br>mike@barrettdeangelo.com<br>*(Attorney for Maurizio Bianchi, Administrator of the Estate of Marco Bianchi, Deceased, in his own right and on behalf of decedent's next of kin and Alex Bianchi)* |

| | |
|---|---|
| John E. Tyrrell, Esquire<br>Francis P. Burns, III, Esquire<br>Ricci Tyrrell Johnson & Grey<br>1515 Market Street, Suite 1800<br>Philadelphia, PA 19102<br>jtyrrell@rtjglaw.com<br>fburns@rtjglaw.com<br>*(Attorneys for Eagles Stadium Operator, LLC)* | John E. Tyrrell, Esquire<br>Ricci Tyrrell Johnson & Grey<br>1515 Market Street, Suite 1800<br>Philadelphia, PA 19102<br>jtyrrell@rtjglaw.com<br>*(Attorney for National Football League)* |

Dated: November 17, 2022          HOUSTON HARBAUGH, P.C.

/s/ *R. Brandon McCullough*
R. Brandon McCullough
PA ID No. 208563
Brian D. Lipkin, Esquire
PA ID No. 327913
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
mcculloughb@hh-law.com
blipkin@hh-law.com

*Counsel for Defendants*
*National Fire & Marine Insurance Company and*
*MedPro Group*